Affirmed and Opinion filed April 20, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00382-CV



 

ROBERT C. RYAN, JEFFREY L. DORRELL, STEVEN HOWELL,
JOANN MCCRACKEN, LONNIE BUCKNER, BARBARA COFFMAN BUCK, SHANNON BURNS, DAN HALL,
and PAT RIDDLE WOMACK, Appellants

V.

Charles a. Rosenthal, in his
capacity as district attorney of harris county, texas, Appellee

 



On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 08-09025



 

OPINION

 

Appellants Robert C. Ryan, Jeffrey L. Dorrell, Steven
Howell, JoAnn McCracken, Lonnie Buckner, Barbara Coffman Buck, Shannon Burns,
Dan Hall, and Pat Riddle Womack appeal from the 190th District Court’s order
granting appellee Charles A. Rosenthal’s motion to dismiss their declaratory
judgment action for lack of subject matter jurisdiction.  We affirm.

Background[1]

The
issue before us focuses on the circumstances under which a district court can
exercise its civil jurisdiction by issuing a declaratory judgment addressing the
enforceability of a criminal statute.

This appeal arises from proceedings
in the 263rd District Court and the 190th District Court in Harris County.  By
local rule and statutory preference, the 263rd District Court hears only
criminal cases.  The 190th District Court hears only civil cases.[2]

Appellants served as members of the
263rd District Court’s grand jury from August 6, 2007 to November 2, 2007 and
are referred to collectively as the “Grand Jurors.”  During that term, the
Grand Jurors considered whether indictments should be presented against any
individual in connection with a June 28, 2007 fire that destroyed a house at
3507 High Falls Drive in unincorporated Harris County, Texas.  The house was
owned by David M. Medina and his wife Francisca Medina.

On November 2, 2007, the 263rd
District Court signed an order extending the grand jury’s term to expire on
February 1, 2008.

On January 17, 2008, the Grand Jurors
presented indictments against David and Francisca Medina.  The indictment presented
against Francisca Medina stated that she unlawfully “start[ed] a fire by
igniting a combustible fluid with the intent to destroy and damage a habitation
located at 3507 High Falls Drive” on June 28, 2007 and “knew that the
habitation was subject to a mortgage and security interest.”  The indictment
presented against David Medina stated that he presented “a letter concerning an
arson fire occurring at 3507 [High] Falls Drive . . . with knowledge of its
falsity and with intent to affect the course and outcome of the investigation”
of the June 28, 2007 fire.  The indictments were dismissed on January 18, 2008 upon
the State’s motion on grounds of insufficient evidence.[3]

The presentment and dismissal of
indictments against David Medina, a sitting justice on the Supreme Court of
Texas, and his wife received widespread media coverage.  Media reports on
January 17, 2008 discussed the indictments; reported that Harris County
District Attorney Charles A. Rosenthal intended to seek dismissal of the indictments;
and reported that grand jurors Ryan and Dorrell had criticized Rosenthal for his
handling of the indictments.

David Medina’s attorney held a televised
press conference on January 18, 2008 after the indictments were dismissed,
during which he criticized the Grand Jurors for presenting the indictments.  David
Medina’s attorney also filed a petition for a show cause hearing in the 263rd
District Court to determine whether grand jurors Ryan and Dorrell should be
held in contempt for violating the statutory requirement of grand jury secrecy
based upon their statements to the media in connection with the Medina
indictments.  See Tex. Code Crim. Proc. art 20.02(a) (Vernon 2005) (“The
proceedings of the grand jury shall be secret.”); id. art. 20.02(b) (“A grand
juror . . . who discloses anything transpiring before the grand jury . . . in
the course of the official duties of the grand jury . . . shall be liable to a
fine as for contempt of the court, not exceeding five hundred dollars,
imprisonment not exceeding thirty days, or both such fine and imprisonment.”). 
The criticism by David Medina’s attorney directed at the Grand Jurors and the
filing of the petition for a show cause hearing were reported in the media on
January 19, 2008.

On January 22, 2008, the 263rd
District Court held that the November 2, 2007 order extending the grand jury’s
term contained a defect and was invalid.  That same day, eight grand jurors
held a televised press conference at which they addressed criticism that had
been directed at them regarding the Medina indictments.  The Grand Jurors
allege that information required to be kept secret under article 22.02(a) was
not disclosed in the course of this press conference.

On February 15, 2008, the Grand
Jurors filed their original petition for a declaratory judgment against
Rosenthal and the State of Texas in the 190th District Court.  They
subsequently filed amended petitions culminating in Plaintiffs’ Third Amended
Original Petition for Declaratory Judgment, in which they contended that they “have
both the right and the privilege to disclose evidence showing that they were
not a ‘runaway grand jury’ when they indicted Texas Supreme Court Justice David
M. Medina for evidence tampering.”  The Grand Jurors also asserted that they
“should be free, if they wish, to defend themselves without fear of
incarceration or other sanction for doing so.”  They requested the following specific
declarations.

·       
The Grand Jurors
“have the right and privilege to publicly disclose evidence and testimony considered
by the Grand Jury before voting the indictments of David M. Medina in response
to David M. Medina’s public attacks on [the Grand Jurors’] . . . character . .
. .”  As support for this declaration the Grand Jurors rely upon Houston
Press Co. v. Smith, 3 S.W.2d 900, 907 (Tex. Civ. App.—Galveston 1928, writ
dism’d w.o.j), a libel case brought by a former district attorney against a
newspaper arising in part from reports concerning disputes between the former district
attorney and grand jurors.[4]

·       
The Grand Jurors
“are not subject to the penalties of Tex.
Code Crim. Proc. art. 20.02 for disclosing anything transpiring before
the unlawfully constituted Grand Jury after November 2, 2007 . . . .”
(original emphasis).

·       
The Grand jurors
“are not subject to the penalties of Tex.
Code Crim. Proc. art. 20.02 for disclosing evidence and testimony
considered by the Grand Jury supporting the indictments of David and Francisca
Medina before or after November 2, 2007, to another lawfully
constituted Harris County grand jury meeting in secret and whose members are
bound by the oath of secrecy . . . .” (original emphasis).

The Grand Jurors do not seek to
invalidate article 20.02 on constitutional grounds or to enjoin enforcement of
the statute; they concede article 20.02 is constitutional and valid.  The Grand
Jurors do not contend that a statutory exception to grand jury secrecy applies
in this case.  See Tex. Code Crim. Proc. art. 20.02(c), (d), (e) (Vernon
2005).

Rosenthal filed a motion to dismiss
the Grand Jurors’ declaratory judgment action for lack of subject matter
jurisdiction, contending that the 190th District Court lacks civil jurisdiction
to construe a criminal statute and determine whether disclosure of evidence and
testimony presented before the 263rd District Court’s grand jury violates
article 20.02’s criminal contempt provisions.

The 190th District Court signed an
order on April 30, 2008 granting Rosenthal’s motion to dismiss, and the Grand
Jurors timely appealed.[5] 


Analysis

The
Grand Jurors raise five issues on appeal challenging the 190th District Court’s
April 30, 2008 order.

In
their first three issues, the Grand Jurors assail the 190th District Court’s
determination that it lacked subject matter jurisdiction to consider their
declaratory judgment action.  “Whether a court has subject matter jurisdiction
is a question of law.”  Tex. Dep’t. of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226 (Tex. 2004).  “Whether a pleader has alleged facts that
affirmatively demonstrate a trial court’s subject matter jurisdiction is a
question of law reviewed de novo.”  Id.  “Likewise, whether
undisputed evidence of jurisdictional facts establishes a trial court’s
jurisdiction is also a question of law.”  Id.

We
begin by reviewing the settled law establishing that civil jurisdiction to
address criminal statutes is narrowly circumscribed.

I.                  
Civil Jurisdiction to
Address Criminal Statutes is Limited

A.        Civil
Jurisdiction to Enjoin Enforcement is Narrow

“[A]s
a rule, a party cannot seek to construe or enjoin enforcement of a criminal
statute in a civil proceeding without a showing of irreparable injury to the
party’s vested property rights.”  Tex. Educ. Agency v. Leeper, 893
S.W.2d 432, 441 (Tex. 1994) (citing State v. Morales, 869 S.W.2d 941
(Tex. 1994)); see also Tex. Liquor Control Bd. v. Canyon Creek Land
Corp., 456 S.W.2d 891, 894 (Tex. 1970) (“The civil courts are not powerless
to interpret [a criminal statute], but its meaning and validity should
ordinarily be determined by courts exercising criminal jurisdiction.”);
Passel v. Fort Worth Indep. Sch. Dist., 440 S.W.2d 61, 63 (Tex. 1969) (“It
is well settled that courts of equity will not interfere with the ordinary
enforcement of a criminal statute unless the statute is unconstitutional and
its enforcement will result in irreparable injury to vested property rights.”);
State v. Shoppers World, Inc., 380 S.W.2d 107, 110 (Tex. 1964)
(“[C]ourts of equity will take jurisdiction to enjoin enforcement of penal laws
only in exceptional situations, thus leaving those laws to be interpreted
through the criminal trial process whenever possible.”).

These
limits mean that a district court has civil jurisdiction to declare a criminal
statute constitutionally invalid and to enjoin its enforcement only when (1) “there
is evidence that the statute at issue is unconstitutionally applied by a rule,
policy, or other noncriminal means subject to a civil court’s equity powers and
irreparable injury to property or personal rights is threatened,” or (2) “the
enforcement of an unconstitutional statute threatens irreparable injury to
property rights.”  Morales, 869 S.W.2d at 942.  “A naked declaration as
to the constitutionality of a criminal statute alone, without a valid request
for injunctive relief, is clearly not within the jurisdiction of a Texas court
sitting in equity.”  Id.; Warren v. Aldridge, 992 S.W.2d 689, 691
(Tex. App.—Houston [14th Dist.] 1999, no pet.) (“[B]efore a civil court may
construe a penal statute and enjoin its enforcement, the complainant must both
attack the constitutionality of the provision and aver that its enforcement
would irreparably injure vested property rights.”); see also City of Houston
v. Guthrie, No. 01-08-00712-CV, 2009 WL 5174258, at *13 (Tex. App.—Houston
[1st Dist.] Dec. 31, 2009, no pet. h.) (citing City of La Marque v. Braskey,
216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)); Morrow
v. Truckload Fireworks, Inc., 230 S.W.3d 232, 236-41 (Tex. App.—Eastland
2007, pet. dism’d as moot); Sterling v. San Antonio Police Dept., 94
S.W.3d 790, 794 (Tex. App.—San Antonio 2002, no pet.); Cornyn v. Akin,
50 S.W.3d 735, 737-38 (Tex. App.—El Paso 2001, no pet.); Letson v. Barnes,
979 S.W.2d 414, 418 (Tex. App.—Amarillo 1998, pet. denied).[6]

The limits on civil jurisdiction to address criminal
statutes are grounded on important public policy considerations.

“The
underlying reason for this rule is that the meaning and validity of a penal
statute or ordinance should ordinarily be determined by courts exercising
criminal jurisdiction.”  Passel, 440 S.W.2d at 63.  “When these
questions can be resolved in any criminal proceeding that may be instituted and
vested property rights are not in jeopardy, there is no occasion for the
intervention of equity.”  Id.  “A person may continue his activities
until he is arrested and then procure his release by showing that the law is
void.”  Id.; see also Morales, 869 S.W.2d at 945.

This longstanding
policy favoring construction of criminal statutes in criminal proceedings rests
in part on “a pragmatic justification” arising from the fact that Texas has two
courts of last resort:  The Supreme Court of Texas, which has final appellate
jurisdiction in civil cases, and the Texas Court of Criminal Appeals, which has
final appellate jurisdiction in criminal cases.  Morales, 869 S.W.2d at
947; see also Tex. Const. art. V, § 3(a), 5(a).

Having
competing trial courts construe criminal statutes in parallel civil and
criminal proceedings would “‘create confusion . . . and might result finally in
precise contradiction of opinions between the [civil courts] and the Court of
Criminal Appeals to which the Constitution has [e]ntrusted supreme and
exclusive jurisdiction in criminal matters.’”  Morales, 869 S.W.2d at
947-48 (quoting Roberts v. Gossett, 88 S.W.2d 507, 509 (Tex. Civ.
App.—Amarillo 1935, no writ)).  “[I]f civil courts were to accept jurisdiction,
a potential for conflicting decisions . . . between our civil and criminal
courts of last resort on the validity of such statutes [would be] . . . a very
real danger.”  Morales, 869 S.W.2d at 948 (citing Dearing v. Wright,
653 S.W.2d 288, 290 (Tex. 1983)).  “[I]t is the prospect that civil
courts will get into the business of construing criminal statutes which
represents the real danger.”  Morales, 869 S.W.2d at 948 n.16 (original
emphasis).

But pragmatism
is not the only consideration, or the most important one.  These limits protect
“[t]he very balance of state governmental power imposed by the framers of the
Texas Constitution . . . .” Id. at 949.  This balance “depends on each
branch, and particularly the judiciary, operating within its jurisdictional
bounds.”  Id.  “The checks and balances inherent in our form of
government depend upon the judiciary’s equanimity and particularly upon our
self-restraint.”  Id.  “When a court lacks jurisdiction, its only
legitimate choice is to dismiss.”  Id.

B.        Civil
Jurisdiction to Issue Declaratory Relief Also is Narrow

The limits on civil jurisdiction to
address criminal statutes do not apply only in suits seeking injunctive relief.

“The
considerations that lead courts of equity to deny injunctive relief against
enforcement of the criminal laws apply with equal force to an action for a
declaratory judgment construing a penal statute.”  Tex. Liquor Control Bd.,
456 S.W.2d at 896.  “[T]he procedures prescribed by the Legislature should not
be circumvented or delayed by the prosecution of a declaratory judgment action
to obtain a construction of the penal statute by the civil courts.”  Id.

This
further limitation dovetails with the precept that the statutory authorization
for declaratory judgments does not by itself confer jurisdiction.  See generally
Tex. Civ. Prac. & Rem. Code Ann. § 37.001 et seq. (Vernon 2008).  “Just
as an injunction is a remedial writ that depends in the first instance on the
existence of the issuing court’s equity jurisdiction, we have held that the
Uniform Declaratory Judgments Act . . . is merely a procedural device for
deciding cases already within a court’s jurisdiction.”  Morales, 869
S.W.2d at 947 (citations omitted).  “A litigant’s request for declaratory
relief cannot confer jurisdiction on the court, nor can it change the basic
character of a suit.”  Id.

“For
the same reasons that equity courts are precluded from enjoining the
enforcement of penal statutes, neither this court, nor the courts below, have
jurisdiction to render a declaratory judgment regarding the constitutionality
of [a criminal statute].”  Id.  “A civil court simply has no
jurisdiction to render naked declarations of ‘rights, status or other legal
relationships arising under a penal statute.’”  Id. (quoting Malone
v. City of Houston, 278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955,
writ ref’d n.r.e.)); see also Guthrie, 2009 WL 5174258 at *13 (citing City
of La Marque, 216 S.W.3d at 863); Trantham v. Isaacks, 218 S.W.3d
750, 753-54 (Tex. App.—Fort Worth 2007, pet. denied) (citing Briar Voluntary
Fire Dept. v. Anderson, No. 02-04-258-CV, 2005 WL 1475409, at *2 (Tex.
App.—Fort Worth June 23, 2005, no pet.) (mem. op.)).

We now measure the Grand Jurors’ requested declaratory
relief against these longstanding limits on civil jurisdiction and the
undisputed jurisdictional facts.

II.              
The Grand Jurors’ Requested Relief Exceeds the Limits of a
District Court’s Civil Jurisdiction

In its findings of fact and
conclusions of law, the 190th District Court made the following determinations (among
others).

·       
The Grand Jurors were members of the 263rd District Court’s grand
jury.

·       
The Grand Jurors took an oath to “keep secret” those matters
occurring in the grand jury room unless they were “required to disclose the
same in the course of a judicial proceeding in which the truth or falsity of
evidence given in the grand jury room, in a criminal case, shall be under
investigation.”  See Tex. Code Crim. Proc. art. 19.34 (Vernon 2005).

·       
Article 20.02(a) provides that “[t]he proceedings of the grand
jury shall be secret.”  See Tex. Code Crim. Proc. art. 20.02(a).

·       
Article 20.02’s constitutionality is not challenged.  The parties
agree that this provision is constitutional.

·       
The Grand Jurors did not allege that immediate irreparable harm
to persons or vested property rights is likely to occur absent issuance of a
declaratory judgment recognizing an exception to or exemption from the effects
of the criminal statute governing the secrecy of grand jury proceedings.

Appellants do not challenge the
determinations listed above.  In light of these unchallenged determinations, the Grand Jurors’ claims
do not fall within the 190th District Court’s limited civil jurisdiction to
address a criminal statute.  See Morales, 869 S.W.2d at 942; Warren,
992 S.W.2d at 691; see also Guthrie, 2009 WL 5174258, at *13 (citing City
of La Marque, 216 S.W.3d at 863); Morrow, 230 S.W.3d at 236-41; Sterling,
94 S.W.3d at 794; Cornyn, 50 S.W.3d at 737-38; Letson, 979 S.W.2d
at 418.  The Grand Jurors make three arguments in an effort to circumvent the applicable
jurisdictional limits.

First,
the Grand Jurors argue that subject matter jurisdiction exists because they requested
only declaratory relief; they neither invoked the 190th District Court’s equity
power nor sought to enjoin article 20.02’s enforcement.

The Grand
Jurors’ first argument fails because the limits on a district court’s civil jurisdiction
to address a criminal statute apply regardless of whether the requested relief
is framed as an injunction or a declaratory judgment.  Morales, 869
S.W.2d at 947 (“A civil court simply has no jurisdiction to render naked
declarations of ‘rights, status or other legal relationships arising under a
penal statute.’”) (quoting Malone, 278 S.W.2d at 206); Tex. Liquor
Control Bd., 456 S.W.2d at 896 (“The considerations that lead courts of
equity to deny injunctive relief against enforcement of the criminal laws apply
with equal force to an action for a declaratory judgment construing a penal
statute.”); Warren, 992 S.W.2d at 691 (“[O]ne of the two Morales
elements has not been satisfied, and . . . the trial court had no jurisdiction
to render a declaratory judgment or to enjoin the enforcement of the penal
statute.”); see also Guthrie, 2009 WL 5174258, at *13; Trantham,
218 S.W.3d at 753-54; City of La Marque, 216 S.W.3d at 863; Briar
Voluntary Fire Dept., 2005 WL 1475409, at *2.[7]

Second, the Grand Jurors argue that subject matter
jurisdiction exists because they refrained from challenging article 20.02’s constitutionality.

The second argument cuts against the Grand Jurors
because the absence of a constitutional challenge to the targeted penal statute
forecloses civil jurisdiction.  See Morales, 869 S.W.2d at 942; Warren,
992 S.W.2d at 691.  Moreover, the absence of civil jurisdiction “to render
naked declarations of ‘rights, status, or other legal relationships arising
under a penal statute’” encompasses both “naked declarations” focused on constitutionality
as well as “naked declarations” focused on determining whether particular
conduct violates a particular penal statute or ordinance.  See Morales,
869 S.W.2d at 947; Tex. Liquor Control Bd., 456 S.W.2d at 896.[8]

The Grand Jurors seek to bolster their second
argument by pointing to City of Argyle v. Pierce, 258 S.W.3d 674, 681
(Tex. App.—Fort Worth 2008, pet. dism’d), which relies on the absence of a
constitutional challenge in discussing whether a district court had subject
matter jurisdiction to address a penal ordinance regulating billboard placement. 
The court of appeals affirmed in part the district court’s order denying the
city’s plea to the jurisdiction insofar as that order addressed a request for a
declaratory judgment construing the penal ordinance.  Id. at 686.  In so
doing, the court of appeals stressed that the property owner and the billboard
company who sought the declaratory judgment were not challenging the penal
ordinance’s constitutionality or enforceability; “rather, their lawsuit seeks a
declaration that their conduct did not constitute a violation of that
[o]rdinance.”  Id. at 681 (original emphasis).  “Accordingly, we hold
that State v. Morales does not affect the trial court’s jurisdiction in
this case . . . .”  Id.  The Grand Jurors ask us to apply similar
reasoning here.

We
decline the Grand Jurors’ invitation to follow City of Argyle.  As a
threshold matter, we look to this court’s own precedent for guidance on this
issue; that precedent confirms the propriety of dismissing the Grand Jurors’
suit for lack of subject matter jurisdiction.  See Warren, 992 S.W.2d at
691 (District court lacked civil jurisdiction to render declaratory judgment
that “use of ‘eight liner’ machines does not constitute criminal activity”; absent
challenge to constitutionality of penal statute prohibiting possession of
gambling devices, “one of the two Morales elements has not been
satisfied, and we must hold the trial court had no jurisdiction to render a
declaratory judgment or to enjoin the enforcement of the penal statute.”).

More
fundamentally, City of Argyle is incompatible with Morales and
its progeny.  Contrary to City of Argyle’s reasoning, the absence of a
constitutional challenge contracts rather than expands a district court’s civil
jurisdiction to construe a criminal statute.  See Morales, 869 S.W.2d at
942, 945-47; Guthrie, 2009 WL 5174258, at *13-*14; Trantham, 218
S.W.3d at 752, 753-55; City of La Marque, 216 S.W.3d at 863-64; Sterling,
94 S.W.3d at 794; Warren, 992 S.W.2d at 691.[9]

The
approach advocated by the Grand Jurors also is incompatible with the pragmatic justifications
for the limits in Texas on civil jurisdiction to address criminal statutes. 
The mere “prospect” of having courts exercise civil jurisdiction to construe criminal
statutes was deemed to be a “danger” in Morales.  Morales, 869
S.W.2d at 948 n.16.  Here, the danger of confusion and conflict is far greater.

The
Grand Jurors sought a declaration in the 190th District as to their potential
criminal liability under article 20.02 while a petition for a show cause
hearing was pending simultaneously in the 263rd District Court.  The petition
asserted that grand jurors Ryan and Dorrell violated article 20.02 “by making
numerous illegal statements to members of the media and the public” regarding
matters before the grand jury.  A judgment from the 190th District Court
containing the declarations requested by the Grand Jurors would create a direct
conflict if the 263rd District Court were to find that the Grand Jurors
violated article 20.02 and hold them in contempt.  An appeal from a declaratory
judgment signed by the 190th District Court would proceed in this court, and potentially
in the Texas Supreme Court.  Jurisdiction to review a contempt order entered by
a district court in connection with criminal proceedings rests with the Court
of Criminal Appeals by writ of habeas corpus.  See Ex parte Thompson,
273 S.W.3d 177, 181 (Tex. Crim. App. 2008).  This scenario involving the
issuance of competing pronouncements by different district courts exercising
civil and criminal jurisdiction, and review of those competing pronouncements
by different appellate courts, would set the stage for confusion and conflict
with respect to criminal liability arising from disclosure of grand jury
evidence under article 20.02.  This is precisely the situation that the limits
on civil jurisdiction are designed to avoid.  See Morales, 869 S.W.2d at
947-48.

In
further support of their second argument, the Grand Jurors contend that the
limits on civil jurisdiction should not apply to them because the absence of a
constitutional challenge to article 20.02 means they cannot “continue [their]
activities until arrested and then procure [their] release by showing that the
law is void” as contemplated in Morales, 869 S.W.2d at 945, and Passel,
440 S.W.2d at 63.  Justice Guittard provides the response to this contention.  See
Better Home Prods. of Tex., Co. v. City of Dallas, 517 S.W.2d 373, 374
(Tex. Civ. App.—Dallas 1974, writ ref’d n.r.e.).  “We acknowledge the force of
the argument that a litigant desiring to test the applicability or validity of
a penal ordinance . . . should be able to do so by the orderly process of civil
litigation . . . .”  Id.  Justice Guittard also acknowledged such a
litigant’s desire to “not be put to the choice of either submitting to such
regulation or exposing himself to the risk of criminal penalties.”  Id. 
“Nevertheless, civil courts do not sit to give advice.”  Id.  For this
reason, unconstitutionality and irreparable injury must be established before a
court exercising civil jurisdiction will “grant declaratory relief to avoid a
criminal prosecution.”  Id.  These words apply with equal force here.

Third,
the Grand Jurors argue that they “sought no construction of any criminal
statute from the court below” because they seek recognition of a “civil
privilege” to disclose grand jury evidence rather than an interpretation of an
existing statutory exception to grand jury secrecy under article 20.02.

We
reject the Grand Jurors’ third argument.  Regardless of how the claimed
“privilege” is characterized, the requested declarations expressly seek to
insulate the Grand Jurors from criminal liability under article 20.02.  In
Plaintiffs’ Third Amended Original Petition for Declaratory Judgment, the Grand
Jurors assert that they “seek a declaration that they have a privilege to
fairly respond to the defamatory attacks upon their character by revealing the
overwhelming evidence considered by the Grand Jury . . . .”  The Grand Jurors
contend they “should be able to do so without being prosecuted, sanctioned,
fined, or jailed for violating Tex. Code
Crim. Proc. art. 20.02.”  The Grand Jurors also request declarations
that they “are not subject to the penalties of Tex. Code Crim. Proc. art. 20.02 for disclosing anything
transpiring before the unlawfully constituted Grand Jury” after November 2,
2007 or for disclosing evidence “to another lawfully constituted Harris County
grand jury meeting in secret and whose members are bound by the oath of
secrecy.”

These
are requests to construe article 20.02 so that it is not enforceable against the
Grand Jurors in certain circumstances.  If the Grand Jurors were to succeed in
obtaining these declarations from the 190th District Court, they would thereby obtain
an impermissible declaration of their “‘rights’” and “‘status’” as persons who
could not be prosecuted “‘under a penal statute’” in contravention of Morales. 
See Morales, 869 S.W.2d at 947 (quoting Malone, 278 S.W.2d
at 206).  The 190th District Court lacks civil jurisdiction to make “naked
declarations” of this nature.  Id.

 

We
overrule the Grand Jurors’ first three issues challenging the 190th District
Court’s order granting Rosenthal’s motion to dismiss for lack of subject matter
jurisdiction.[10]

Conclusion

We affirm the 190th District Court’s order granting
the motion to dismiss for lack of subject matter jurisdiction.

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Justices Brown and
Boyce, and Senior Justice Mirabal.[11]

 









[1]
The factual recitations in this opinion are based primarily upon the
allegations in the Grand Jurors’ third amended petition, which was the live
pleading on file when the 190th District Court signed its order dismissing the
case for lack of subject matter jurisdiction.  See Tex. Natural Res. &
Conservation Comm’n v. White, 46 S.W.3d 864, 868 (Tex. 2001).





[2]
Appellate opinions sometimes refer in shorthand fashion to the ability of
“civil courts” to address enforceability of criminal statutes.  The Texas
Constitution provides that district courts have jurisdiction over both civil
and criminal cases.  Tex. Const. art. V, § 8; State v. Landry, 793
S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding) (citing
Lord v. Clayton, 163 Tex. 62, 352 S.W.2d 718, 721-22 (1961), and Reasonover
v. Reasonover, 122 Tex. 512, 58 S.W.2d 817 (1933)).  It follows that the
190th District Court is not a “civil court” in a constitutional sense; the
190th District Court hears only civil cases, but that occurs pursuant to local
rule rather than by constitutional or statutory decree.  Harris County Dist. Judges Admin. R.
9.1.3 (assigning the 190th District Court to the “civil division” and the 263rd
District Court to the “criminal division”); see also Tex. Gov’t Code §
24.440(b) (Vernon 2004) (providing that “[t]he 263rd District Court shall give
preference to criminal cases.”).  Therefore, it is more precise to frame the
issue in terms of a district court’s ability to address the enforceability of a
criminal statute through the exercise of its civil jurisdiction.

 





[3]
We take judicial notice that another grand jury presented an indictment against
Francisca Medina on April 30, 2008 in connection with the June 28, 2007 fire,
and that the second indictment was dismissed on August 27, 2009.  See Tex.
R. Evid. 201(b); Langdale v. Villamil, 813 S.W.2d 187, 189-90 (Tex.
App.—Houston [14th Dist.] 1991, no writ). 





[4]
We express no opinion about whether Houston Press Company, which
addressed a privilege to make statements as a defense to liability for monetary
damages in a libel suit, is germane to determining whether secret grand jury
proceedings can be disclosed without suffering criminal penalties under article
20.02.  See Houston Press Co., 3 S.W.2d at 907-08.





[5]
The Grand Jurors filed a notice of nonsuit of their claims against the State of
Texas on March 10, 2008.  The trial court signed an order granting the nonsuit
on March 18, 2008.

 





[6]
The Grand Jurors cite City of San Antonio v. Rankin, 905 S.W.2d 427,
429, 431 (Tex. App.—San Antonio 1995, no writ), in which a district court
permissibly exercised civil jurisdiction to enjoin enforcement of a penal
ordinance despite the asserted absence of a vested property right.  The penal
ordinance required fire department supervisors to file annual financial
disclosure statements.  Id.  Rankin is distinguishable because
the injunction at issue also prohibited the city from taking internal
disciplinary action against the supervisors for failing to file disclosure
statements in response to the fire chief’s directive to do so.  Therefore, “the
trial court had jurisdiction in this instance because the fire chief’s memo was
considered a direct order and thus subjected the supervisors to employment-related
disciplinary action in addition to criminal prosecution.”  Morrow, 230
S.W.3d at 237 (citing Rankin, 905 S.W.2d at 429-30).  The Grand Jurors’
claims do not involve a dual criminal and employment-related disciplinary process. 
See id.

 





[7]
We are not persuaded by the Grand Jurors’ invocation of Euresti v. Valdez,
769 S.W.2d 575, 582 (Tex. App.—Corpus Christi 1989, orig. proceeding), or Marks
v. Feldman, 910 S.W.2d 73, 77-78 (Tex. App.—Dallas 1995), rev’d on other
grounds sub nom. United States v. Marks, 949 S.W.2d 320 (Tex. 1997).  Euresti
denied a petition for writ of mandamus seeking to vacate an order requiring
disclosure of grand jury testimony and exhibits in connection with discovery in
a malicious prosecution case.  See Euresti, 769 S.W.2d at 576.  Marks
addressed the propriety of sealing an in camera hearing concerning
matters being investigated by a federal grand jury in light of federal
standards governing grand jury secrecy.  Marks, 910 S.W.2d at 77-78. 
Neither case involved a request for a declaratory judgment delineating a
litigant’s criminal liability or lack thereof under a Texas penal statute. 
Therefore, neither case confronts the core issue presented herein regarding a
Texas district court’s civil jurisdiction to address a request for such
declaratory relief absent a constitutional challenge to the penal statute at
issue and allegations of irreparable harm.  Similarly, the Grand Jurors’
citation of numerous criminal cases discussing grand jury secrecy
sheds no light on a district court’s ability to exercise civil
jurisdiction to entertain a request for declaratory relief concerning the scope
of statutory grand jury secrecy.





[8]
See also Guthrie, 2009 WL 5174258, at *13-*14 (District court lacked civil
jurisdiction to render declaratory judgment that fire code “does not prohibit
the transportation of consumer fireworks from one legal location outside the
city limits of the City of Houston to another, even if the highway or roadway
includes in whole or in part a purported [Limited Purpose Annexation].”); Trantham,
218 S.W.3d at 752, 753-55 (District court lacked civil jurisdiction to declare
appellee’s guilt in connection with alleged violation of criminal statute; a
“declaratory judgment . . . was an improper vehicle for determining Appellee’s
potential . . . criminal liability.”); City of La Marque, 216 S.W.3d at
863-64 (District court lacked civil jurisdiction to render declaratory judgment
that penal ordinance governing location of kennels did not apply to appellant’s
cat shelter); Sterling, 94 S.W.3d at 794 (District court lacked civil jurisdiction
to address a “request for an interpretation of [a criminal statute] . . . and a
declaration that the use of his [eight liner] machines by the fire departments
was not illegal under [the] Penal Code . . . .”); Warren, 992 S.W.2d at
691 (District court lacked civil jurisdiction to render declaratory judgment
that appellant’s operation of eight liner device fell within exception to
criminal statute prohibiting ownership, manufacture or possession of machine
designed for gambling purposes).





[9]
We also note that City of Argyle’s holding appears to be in tension with
an earlier decision by the same court in Trantham, and with a memorandum
opinion from the same court cited in Trantham.  See Trantham, 218
S.W.3d at 753-54 (“Nor can a civil court issue a declaratory judgment to
‘render naked declarations of rights, status or other legal relationships
arising under a penal statute.’”) (quoting Morales, 869 S.W.2d at 947,
and citing Briar Voluntary Fire Dept., 2005 WL 1475409, at *2); Briar
Voluntary Fire Dept., 2005 WL 1475409, at *2 (“[I]n accord with the Warren
court, we hold that because Appellant did not attack the constitutionality of
the statute, which is required to give the civil court jurisdiction under Morales
. . . the trial court did not err by holding that it had no jurisdiction to
render a declaratory judgment.”).





[10]
Given our disposition of the first three issues, we do not reach the Grand
Jurors’ fourth issue addressing justiciability.  In their fifth and final issue,
the Grand Jurors contend that Rosenthal’s jurisdictional challenge should have
been framed as a plea in abatement based on concurrent jurisdiction.  We reject
the Grand Jurors’ contention and their fifth issue because the jurisdictional
issue here is not grounded on the existence of concurrent jurisdiction
belonging to both the 263rd District Court and the 190th District Court.  The
issue here is a lack of civil jurisdiction that would allow the 190th District
Court to issue a declaratory judgment in the absence of allegations (1)
challenging article 20.02’s constitutionality, and (2) asserting irreparable
harm.  See Morales, 869 S.W.2d at 942, 947.  We also reject the Grand
Jurors’ contention that Rosenthal’s challenge to subject matter jurisdiction is
foreclosed because he failed to deny the Grand Jurors’ averment that all
conditions precedent had been satisfied.  “Subject matter jurisdiction is never
presumed and cannot be waived.”  Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443-44 (Tex. 1993).





[11]
Senior Justice Margaret Garner Mirabal sitting by assignment.